[Cite as *State v. Brown*, 2018-Ohio-4947.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0034** |
| MARQUE DAQUAN BROWN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2014 CR 00361.

Judgment: Affirmed.


*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Wesley A. Johnston*, P.O. Box 6041, Youngstown, OH 44501; and *Eric D. Hall*, P.O. Box 232, Medina, OH 44258 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1} Appellant, Marque Daquan Brown, appeals from the judgment entry of resentence issued by the Ashtabula County Court of Common Pleas on March 15, 2018, sentencing appellant to two consecutive eleven-year prison sentences on two counts of involuntary manslaughter. The trial court's judgment is affirmed.

{¶2} This case stems from an altercation that occurred between appellant and his girlfriend, Taisha Ramirez, on or about May 25, 2014. On that date, appellant and

Taisha were 20 and 17 years old, respectively. Taisha was approximately seven or eight months pregnant with appellant's son. They resided together at the home of Taisha's mother, along with Taisha's four brothers, Jose, Andre, Ismal, and Kenny, and Taisha's 13-year old sister, J.R.

{¶3} Taisha and J.R. went to bed in the same room around 10:00 p.m.; appellant was not home at the time. Around 3:00 a.m., the sisters were awoken by appellant knocking on the door; Taisha let him in the house. Appellant and Taisha went upstairs to the room they shared on the third floor; J.R. followed and remained on the stairs where she could see them. The couple then went to the mother's bedroom on the second floor; J.R. followed and stood in the doorway while the couple argued for about 20 minutes. The couple moved to the bathroom and closed the door for about 10 minutes.

{¶4} J.R. opened the bathroom door when she heard Taisha screaming and crying. J.R. heard Taisha tell appellant not to punch her and observed Taisha on the ground, bleeding from her nose. J.R. saw appellant punch Taisha in the face with a closed fist three or four times. J.R. unsuccessfully attempted to get appellant away from Taisha. J.R. observed blood on the floor of the bathroom, and Taisha's nose appeared to be broken and her lips were cut.

{¶5} Ismal and Kenny were alerted to the situation and observed Taisha sitting on the bathroom floor, bleeding from her nose, and crying; her nose and mouth were swollen. The brothers both punched appellant and then took him downstairs; appellant was yelling that he was sorry and asking Taisha to forgive him. Ismal called the police. J.R. helped Taisha downstairs because she was unable to walk on her own. By the time they made it downstairs, the police had arrived.

{¶6} Officer Daniel Gillespie, of the Ashtabula City Police Department, reported to the scene with another patrolman. Upon entering the residence, he observed multiple occupants focusing their anger at appellant, who was backing up towards the door with his hands up. Officer Gillespie placed appellant in his patrol car and went back inside to investigate. He observed Taisha crying and bleeding heavily from her nose, which was disfigured and swollen; the towel she was holding to her face was soaked with blood. Taisha was reluctant to talk, but she eventually told Officer Gillespie that appellant had hit her while they were arguing.

{¶7} On the way to the police station, appellant indicated he wanted to tell the officer what happened. Officer Gillespie advised appellant of his *Miranda* rights. Appellant stated he was arguing with Taisha, which involved a lot of yelling and screaming, and then he left. Appellant would not answer Officer Gillespie's question of how Taisha became injured. Appellant was booked on a charge of domestic violence.

{¶8} Dr. Imrann Haniff was the emergency room physician on duty when Taisha arrived at Ashtabula County Medical Center ("ACMC") around 6:30 a.m. Kenny rode with Taisha in the ambulance, and J.R. was also present at the hospital. Taisha reported that she had been assaulted and hit in the face one time. Dr. Haniff did not observe anything that contradicted Taisha's report of what happened. He observed that Taisha's lip was swollen, she had blood coming from both nostrils, and she was pregnant. The nurse was able to detect a fetal heart tone at that time, which indicated the fetus was alive. Dr. Haniff did not find any fractures during his examination of Taisha, and he gave her an ice pack. He testified Taisha was in good condition when she was discharged around 7:30 a.m., although J.R. and Kenny testified she did not appear to be healthy.

**{¶9}** When Taisha returned home from the hospital, Ismal observed that she was dizzy and weak; Taisha was helped out of the car and up to a second-floor bedroom. J.R. stayed with Taisha, who started to bleed again from her nose. At approximately 9:15 a.m., Ismal called for another ambulance because Taisha was bleeding and foaming from her nose, she could not talk or move, her nails were turning blue, and she was unresponsive.

**{¶10}** Dr. Haniff again treated Taisha in the emergency room, who arrived this second time in cardiac arrest. The staff performed CPR, and Taisha was intubated; it was difficult to obtain a fetal heart tone. They were unable to revive her. Taisha and her unborn son both died that morning in the emergency room.

**{¶11}** Dr. Joseph Felo, Deputy Medical Examiner and Forensic Pathologist for Cuyahoga County, performed an autopsy on Taisha. He observed diffuse cerebral edema, i.e., swelling of the brain, and a subdural hematoma, i.e., bleeding on the surface of the brain, caused by blunt trauma to her head. He testified that one slap would not have caused the injury because there were three separate impact sites. Dr. Felo noted the pregnancy was in its third trimester, but a separate autopsy was not performed because the child was not born alive. No birth defects were discovered during the external examination, however, and Dr. Felo opined that the unborn child would have lived had Taisha not died.

**{¶12}** Dr. Pamela Lancaster, the Ashtabula County Coroner, investigated Taisha's death at ACMC, reviewed the autopsy report, and issued a death certificate. She ruled the manner of Taisha's death as a homicide and testified that the cause of death was the subdural hematoma due to blunt impacts to the head. Because the child was not born alive, there was not a separate coroner's verdict or death certificate issued.

4

{¶13} Detective William Felt, of the Ashtabula City Police Department, interviewed appellant on May 27, 2014, with Lieutenant Doug Hollis. During the interview, appellant admitted to arguing with Taisha until he was pulled away by Ismal and Kenny. Near the end of the interview, appellant admitted he punched Taisha.

{¶14} On June 26, 2014, appellant was indicted on two counts of murder, unclassified felonies, in violation of R.C. 2903.02(B); two counts of involuntary manslaughter, first-degree felonies, in violation of R.C. 2903.04(A); and two counts of felonious assault, second-degree felonies, in violation of R.C. 2903.11(A)(1). Appellant pled not guilty.

{¶15} A jury trial commenced February 2, 2016. The defense was precluded from offering any evidence of alleged medical negligence as an independent intervening cause of death. One count of felonious assault, as against the unborn child, was dismissed at the state's request following trial. The jury found appellant guilty of two counts of involuntary manslaughter and one count of felonious assault; it found appellant not guilty of both counts of murder.

{¶16} The trial court merged the felonious assault count into both involuntary manslaughter counts for purposes of sentencing. On February 26, 2016, the trial court sentenced appellant to 11 years in prison on each count of involuntary manslaughter, to be served consecutively, for a total term of 22 years in prison.

{¶17} On direct appeal, this court affirmed the judgment in part but reversed in part due to the trial court's failure to make the requisite findings to support imposition of consecutive sentences. *State v. Brown*, 11th Dist. Ashtabula No. 2016-A-0021, 2017-Ohio-9259, ¶86-88. On remand, the trial court was instructed to "either impose concurrent sentences or make the appropriate findings to justify the imposition of consecutive

5

sentences on the record and incorporate them into the judgment entry of sentence." *Id.* at ¶86.

{¶18} The trial court held a resentencing hearing on March 15, 2018, and appellant was again sentenced to 11 years in prison on each count of involuntary manslaughter, to be served consecutively, for a total term of 22 years in prison. Regarding the consecutive nature of the prison terms, the trial court stated:

> On Count Three the defendant caused the death of Taisha Marie Ramirez Cedeno. On Count Four he caused the death of the unborn baby of Taisha Marie Ramirez Cedeno.
>
> Pursuant to Ohio Revised Code Section 2929.14(C)(4)(b), the two separate offenses committed by this defendant under Counts Three and Four were committed as part of one course of conduct, and the harm, specifically two deaths of two innocent people, caused by the two multiple offenses was so incredibly great that no single prison term for any of the offenses committed as part of this course of conduct would adequately reflect the seriousness of the defendant's conduct.
>
> He took two lives. Taisha wasn't even 18 years of age. The fetus had yet to be born, but would have been fully viable had it been born.
>
> I can't imagine it getting any worse than that, and I can't imagine this fetus that would have been viable and would have lived, that that fetus did anything to this defendant to cause or justify being killed.
>
> So this defendant is going to be sentenced to 11 years in prison on Count Four. That sentence will be served consecutively to his sentence on Count Three.
>
> The Court finds that consecutive sentences are necessary to protect the public from future crimes and to punish this offender, and that consecutive sentences are not disproportionate to the seriousness of his conduct or the danger he poses to the public.

{¶19} In the judgment entry of resentence, the trial court provides:

> The Court finds that for reasons stated on the record that consecutive terms should be imposed because it is necessary to protect the public and punish the defendant. Consecutive sentences are not

disproportionate to the conduct of the defendant and to the danger he poses to the public.

The Court finds that on Count Three, the defendant caused the death of Taisha Marie Ramirez Cedeno. The Court finds that on Count Four the defendant caused the death of the unborn baby of Taisha Marie Ramirez Cedeno.

Pursuant to Ohio Revised Code Section §2929.14(C)(4)(b), the two separate offenses committed by the defendant under Counts Three and Four were committed as part of one course of conduct and the harm, specifically two deaths, caused by the two multiple offenses was so great that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of the defendant's conduct.

{¶20} Appellant has appealed this resentencing entry and asserts the following assignment of error for our review:

{¶21} "The trial court erred when it re-sentenced Appellant to consecutive sentences when Appellant's prior criminal history did not demonstrate that consecutive sentences were necessary to protect the public from future crime and constituted [an] abuse of discretion."

{¶22} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14, or * * * [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b).

{¶23} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing

7

and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37.  Otherwise, the sentence is contrary to law.  *Id.*  The trial court has no obligation, however, to engage in a "word-for-word recitation" of the language in the statute or to set forth its reasons to support its findings, as long as they are discernible from the record.  *Id.* at ¶28-29.  "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."  *Id.* at ¶29.

{¶24} Pursuant to R.C. 2929.14(C)(4), a trial court may order separate prison terms for multiple offenses to be served consecutively only if the court finds it "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]"  The trial court must also find that at least one of the following statutory factors applies:

> (a) The offender committed one or more of the multiples offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶25} Appellant asserts the record clearly fails to support the trial court's decision to sentence him to consecutive sentences because he lacked any significant criminal

8

history that would demonstrate consecutive sentences were necessary to protect the public from future crime.

{¶26} Appellant's argument lacks merit, however, because the trial court did not rely on appellant's history of criminal conduct, pursuant to subsection (c) of R.C. 2929.14(C)(4), for its decision to impose consecutive sentences. Rather, the trial court relied on its finding that the harm caused by the multiple offenses was so great or unusual that no single prison term would adequately reflect the seriousness of appellant's conduct, pursuant to subsection (b) of the statute. The trial court was only required to find that one of the subsections apply. The trial court also made the necessary threshold findings that consecutive sentences are necessary to protect the public from future crime or to punish appellant and are not disproportionate to the seriousness of appellant's conduct and the danger he poses to the public.

{¶27} We find that the record supports the trial court's findings under R.C. 2929.14(C)(4) and therefore conclude that the imposition of consecutive sentences should be upheld.

{¶28} Appellant's sole assignment of error is without merit.

{¶29} The judgment entry of resentence of the Ashtabula County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.

9